UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STEELWORKERS, LOCAL 1-1000,

    Plaintiff,

v.

    Case No. 2:08-cv-281
    HON. R. ALLAN EDGAR

FORESTPLY INDUSTRIES, INC.; NEIL
JORGENSEN; and QUAY JORGENSEN;

    Defendants.
_____/

**CORRECTED MEMORANDUM**

Plaintiff United Steelworkers, Local 1-1000 ("USW Local") brings this diversity action against Defendants Forestply Industries, Inc. ("Forestply"), Neil Jorgensen, and Quay Jorgensen seeking enforcement of arbitration awards and judgments obtained pursuant to Canadian law under the Uniform Foreign Country Money Judgments Recognition Act, Mich. Comp. Laws § 691.1131 *et seq.* ("FCMJRA"). *See* [Court Doc. No. 1]. The court has already issued an Amended Judgment in favor of Plaintiff against Defendant Forestply for the amount of $213,227.05 plus interest and costs. [Court Doc. No. 39].

Plaintiff now brings a motion for summary judgment against the remaining Defendants Neil Jorgensen and Quay Jorgensen. [Court Doc. No. 52]. Defendant Quay Jorgensen has responded to the motion for summary judgment and asserts that he is also moving for summary judgment; however, he has failed to file a separate motion for summary judgment and has ignored this court's deadline regarding filing such a motion. [Court Doc. Nos. 58, 47]. Therefore, this court will not view his opposition brief as a motion for summary judgment. The

Plaintiff's motion is now ripe for this court's review.

   **I.     Background**

Plaintiff's Complaint alleges the following facts, most of which appear to be undisputed by the Defendants. USW Local is a Canadian "trade union" within the meaning of the Labour Relations Act, S.O. 1995 of Ontario, Canada ("Labour Relations Act"). Complaint, ¶ 3. Its principle place of business is in Ontario, Canada. *Id.* Plaintiff alleges that Forestply was incorporated in Michigan and was located in Chippewa County, Michigan. *Id.* at ¶ 4. It further alleges that both Neil and Quay Jorgensen were principals in the Forestply organization. *Id.* at ¶¶ 5-6.

Plaintiff alleges, and Defendants do not appear to disagree, that Forestply and USW Local were parties to a collective bargaining agreement ("CBA") pursuant to the Labour Relations Act with Forestply acting as an "employer" within the meaning of the statute. Complaint, ¶ 11. Pursuant to its rights under the Labour Relations Act, Plaintiff obtained arbitration awards and judgments against Forestply in Ontario, Canada. *Id.* at ¶¶ 11-14.

The first case brought against Forestply in Canada was Case No. 07-CV-331247. On June 29, 2006 USW Local obtained an arbitration award ordering Forestply to pay one week's worth of wages to twenty-nine employees who had been laid off at Forestply's operations in Ontario, Canada. Complaint, ¶ 15. On March 7, 2007 the arbitrator ordered Forestply to pay a total amount of $15,932. *Id.* The Ontario Superior Court of Justice entered a judgment against Forestply in the same amount on April 16, 2007 with a 6% interest rate accruing on the amount due as of that date. *Id.* at ¶ 16. [Court Doc. No. 1-2].

The next judgment obtained against Forestply under Canadian law was issued in Case

No. 07-CV-328365. On December 21, 2006 an arbitrator issued an award directing Forestply to pay the amount of $170,174.14 in termination pay and vacation pay owed to bargaining unit members who had worked at Forestply's Ontario, Canada facilities. Complaint, ¶ 18. The Plaintiff obtained a judgment in the Ontario Superior Court of Justice against Forestply on April 16, 2007 in the amount of $170,174.14 with interest of 6% accruing from the date of February 26, 2007. *Id.* at ¶ 19. [Court Doc. No. 1-3].

In Case No. 07-CV-344952 the Plaintiff obtained an arbitration award and a judgment entered in the Ontario Superior Court of Justice against Defendant Neil Jorgensen in the amount of $61,062.14. The arbitrator found him personally liable for the vacation pay previously assessed against Forestply, which remained unpaid at that time. Complaint, ¶¶ 22-23. The judgment was entered on December 5, 2007 with interest accruing at 6% as of that date. *Id. See also*, [Court Doc. No. 1-4]. In his opinion pertaining to Neil Jorgensen, the arbitrator found that

> The union submits that Neil Jorgensen was at all relevant times the principal of the employer corporation. Attached to its submission is a copy of the Corporation Profile Report produced from the Ministry of Consumer and Business Services confirming that Mr. Jorgensen continues as the sole corporate officer.

[Court Doc. No. 1-4, p. 6]. The arbitrator accepted the union's position that Mr. Jorgensen was operating as a corporate officer and awarded a judgment against him. *Id.*

The Complaint further alleges that Forestply failed to file corporate annual reports with the State of Michigan and asserts that its failure to meet corporate obligations under Michigan law has made its principals personally liable for the company's debts. Complaint, ¶ 33-38. As of the date of Plaintiff's motion for summary judgment, none of the sums awarded in the Canadian arbitration awards and subsequent judgment had been paid. [Court Doc. No. 53-2, Declaration of

John Goldthorp ("Goldthorp Decl."), ¶ 5]. Documents filed in support of Plaintiff's motion for summary judgment support most of the general allegations in Plaintiff's Complaint. *See* Goldthorp Decl.; [Court Doc.Nos. 53-6; 53-7; 53-8]. In addition, Plaintiff has submitted records pertaining to Forestply from the website of the Michigan Department of Labor and Economic Growth. [Court Doc. No. 53-14]. These records demonstrate that Forestply filed its Articles of Incorporation on November 30, 1979. *Id.* They further show that Forestply had a status of "automatic dissolution" as of May 15, 1993. *Id.* at p. 4. Defendant Quay Jorgensen was listed on the Articles of Incorporation as the sole incorporator, and he was the sole signatory of the Articles of Incorporation. *Id.* at pp. 6-7. The 1990 Annual Report for the company lists Quay Jorgensen as the President of Forestply with an address of Centralia, Washington. *Id.* at p. 10. Plaintiff has not supplied this court with copies of the relevant CBA or with further documents pertaining to the arbitration proceedings, such as relevant exhibits provided to the arbitrator.

In response to Plaintiff's assertion that Quay Jorgensen is an officer of the dissolved company Forestply, Mr. Jorgensen's responsive brief states:

> Plaintiff does *not* provide any evidence and has not alleged, as it has with respect to Neil, that Quay appeared in the arbitration proceedings leading to the foreign judgments or that the arbitrator found Quay personally liable for any of the arbitration awards. Moreover, Plaintiff has offered no evidence that Quay participated in any way in the continued operations of Forestply following its automatic dissolution or that he was involved in the decisions to enter into the labor agreements that were the subject of the arbitration awards and foreign judgments. In the absence of evidence that Quay participated in or acquiesced in the labor agreements, his mere status as incorporator and officer is insufficient to make him liable for the amended judgment.

[Court Doc. No. 58, pp. 2-3]. Defendant Quay Jorgensen did not file an affidavit in support of his assertion that he was not involved as an officer of Forestply following its dissolution. In

reply to the responsive briefing from Quay Jorgensen, Plaintiff filed the interrogatory responses of Neil Jorgensen. [Court Doc. No. 59-3]. When asked to describe his position with Forestply, Neil Jorgensen responded in discovery:

> Though I was actively involved in the business, and can understand how I may be mistaken as an owner, I am not a principal of Forestply. I have never been an officer, director, shareholder, or principal of Forestply Industries, Inc. I have never been an employee of Forestply Industries, Inc. If I inadvertently said in my Amended Answer to Complaint that I was a principal of Forestply, I was wrong. My father, Quay Jorgensen, was the sole owner and principal of this company. My sole involvement was to assist my father in the operation of the company in his absence. I gave this assistance in 2003 and up through the arbitration proceedings in Canada; however, I never actually attended an arbitration hearing.

*Id.* at p. 2. He further responded that "[t]o the best of my information, knowledge and belief, Quay Jorgensen has been the only owner, officer, director, shareholder, and/or principle [sic] of Forestply Industries, Inc. I do not know of any other person who has served in any of those capacities in connection with this company." *Id.* at p. 3.

Plaintiff seeks enforcement of the Canadian judgments against both Neil and Quay Jorgensen.

## II. Standard of Review

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822

F.2d 1432, 1435 (6th Cir. 1987).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *White*, 909 F.2d at 943-44; *60 Ivy Street*, 822 F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of the witnesses, and determine the truth of the matter. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *60 Ivy Street*, 822 F.2d at 1435-36. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 140 (6th Cir. 1997). If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *University of Cincinnati v. Arkwright Mut. Ins. Co.*, 51 F.3d 1277, 1280 (6th Cir. 1995); *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).

### III. Analysis

#### A. Liability under Michigan's FCMJRA

The FCMJRA provides that:

(1) Except as otherwise provided in subsections (2) and (3), a court of this state shall recognize a foreign-country judgment to which this act applies.
(2) A court of this state shall not recognize a foreign-country judgment if any of the following apply:

(a) The judgment was rendered under a judicial system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law.
(b) The foreign court did not have personal jurisdiction over the defendant.
(c) The foreign court did not have jurisdiction over the subject matter.

(3) A court of this state need not recognize a foreign-country judgment if any of the following apply:

(a) The defendant in the proceeding in the foreign court did not receive notice of the proceeding in sufficient time to enable the defendant to defend.
(b) The judgment was obtained by fraud that deprived the losing party of an adequate opportunity to present its case.
(c) The judgment or the cause of action on which the judgment is based is repugnant to the public policy of this state or of the United States.
(d) The judgment conflicts with another final and conclusive judgment.
(e) The proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be determined otherwise than by proceedings in that foreign court.
(f) If jurisdiction was based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action.
(g) The judgment was rendered in circumstances that raise substantial doubt about the integrity of the rendering court with respect to the judgment.
(h) The specific proceeding in the foreign court leading to the judgment was not compatible with the requirements of due process of law.

(4) A party resisting recognition of a foreign-country judgment has the burden of establishing that a ground for nonrecognition stated in subsection (2) or (3) exists.

Mich. Comp. Laws § 691.1134. The Act further provides that:

If the court in a proceeding under section 6 finds that the foreign-country judgment is entitled to recognition under this act, then, to the extent that the foreign-country judgment grants or denies recovery of a sum of money, the

foreign-country judgment is both of the following:
(a) Conclusive between the parties to the same extent as the judgment of a sister state entitled to full faith and credit in this state would be conclusive.
(b) Enforceable in the same manner and to the same extent as a judgment rendered in this state.

Mich. Comp. Laws § 691.1137. A party seeking enforcement of the foreign country judgment bears the burden of demonstrating that the Act applies to the judgment. Mich. Comp. Laws § 691.1133(3). The Act applies where "(a) The judgment grants or denies recovery of a sum of money. (b) Under the law of the foreign country where rendered, the judgment is final, conclusive, and enforceable." Mich. Comp. Laws § 691.1133(1)(a)-(b). The Act does not cover judgments for taxes, fines or penalties, or for divorce, support, or maintenance associated with domestic relations disputes. Mich. Comp. Laws § 691.1133(2).

In this action Plaintiff provides evidence of a foreign country judgment issued against Neil Jorgensen personally. *See* [Court Doc. No. 53-8]. The judgment provided by the Plaintiff provides that it was issued by the Ontario Superior Court of Justice in Case No. 07-CV-344952 pursuant to Section 48(19) of the Labour Relations Act. The judgment indicates that Mr. Neil Jorgensen appeared on behalf of the responding party. The judgment states that: "I accept the union's submission and order Mr. Neil Jorgensen to pay the union the sum of $61,062.14 representing the total amount of vacation pay in my award of December 21, 2006. Mr. Jorgensen is further ordered to make this payment by December 5, 2007." *Id.* at p. 3. Mr. Neil Jorgensen was listed as the representative of the employer in the arbitration proceedings as well. *Id.* at p. 4. The judgment sought to enforce the arbitration award issued by Arbitrator Joseph Rose in the amount of $61,062.14 against Neil Jorgensen personally as an officer of Forestply. *Id.* at p. 6. The court concludes that the submission of the judgment of the Ontario Superior Court satisfies

the Plaintiff's burden to demonstrate that the FCMJRA applies in this action. Mr. Neil Jorgensen has failed to respond to the Plaintiff's motion for summary judgment, and he has failed to file his own dispositive motion in this case. As Mr. Jorgensen bears the burden of demonstrating that a ground of nonrecognition of the judgment exists, the court can only conclude that he cannot satisfy this burden. *See* Mich. Comp. Laws § 691.1134(4). The judgment is for a sum of money and appears to be final and enforceable. It also does not appear to be a judgment for taxes, a fine, or for sums associated with domestic relations. Therefore, the court finds that the judgment in Case No. 07-CV-344952 against Mr. Neil Jorgensen is enforceable under the FCMJRA. The court will thus order Mr. Neil Jorgensen to pay Plaintiff an amount of $61,062.14 plus interest in accordance with the judgment issued in Ontario Superior Court. The court will **GRANT** Plaintiff's motion for summary judgment on this issue involving Case No. 07-CV-344952.

      B.      **Personal Liability of Corporate Officers of a Dissolved Corporation**

Plaintiff also cites Michigan common law in support of its theory that both Neil and Quay Jorgensen are personally liable for the two outstanding judgments issued against Forestply in Case Numbers 07-CV-331247 and 07-CV-328365 issued by the Ontario Superior Court of Justice.

Michigan law pertaining to corporations states that "[t]he officers of a corporation shall consist of a president, secretary, treasurer, and, if desired, a chairman of the board, 1 or more vice-presidents, and such other officers as may be prescribed by the bylaws or determined by the board." Mich. Comp. Laws § 450.1531(1). Michigan law further states:

> If a domestic corporation neglects or refuses to file any annual report or pay any annual filing fee or a penalty added to the fee required by law, and the neglect or refusal continues for a period of 2 years from the date on which the annual report

or filing fee was due, the corporation shall be automatically dissolved 60 days after the expiration of the 2-year period. The administrator shall notify the corporation of the impending dissolution not later than 90 days before the 2-year period has expired. . . .

Mich Comp. Laws § 450.1922. The Plaintiff has submitted documents from the Michigan Department of Labor and Economic Growth indicating that Forestply was automatically dissolved in 1993 with its most recent annual report being filed with the state in 1990. There is no evidence in the record that Forestply's corporate status was ever reinstated or that it ever fulfilled its corporate obligations under state law after 1993. Defendants do not attempt to dispute evidence indicating that Forestply was automatically dissolved in 1993 or that Forestply ever regained its corporate status retroactively.

> As early as 1932, the Michigan Supreme Court held that:
>
> The law is well settled that: 'If a single individual assumes to act as a corporation and to contract as such, where there is no corporation either de jure or de facto, he will be individually liable on the contract; and individual liability will also attach to all of the stockholders or members of a pretended but nonexisting corporation on contracts entered into in its name if they have expressly or impliedly authorized the contract.
>
> Mechem, Elements of Partnership (2d Ed.) § 29, states the rule applicable here: 'Promoters of corporations are not, as such, partners. Though engaged in endeavoring to secure the organization of a company to carry on business for pecuniary profit, their immediate object is not the transaction of business for mutual gain, and they do not fall within the definition or the purposes of partnership.
>
> 'Nevertheless, if they carry on a business as incident to the organization, or if they launch and conduct the business before the corporation is organized, or if they conduct the business without ever b[ringing] even a de facto corporation into existence, they will usually be liable as partners.'

*Campbell v. Rukamp*, 244 N.W. 222, 223 (Mich. Sup. Ct. 1932).

> In 1982 the Michigan Supreme Court clarified this general rule. In *Bergy Brothers, Inc.*

*v. Zeeland Feeder Pig, Inc.* the Michigan Supreme Court analyzed the "liability of an individual officer for debts incurred in the name of a corporation during the period in which the corporation was in default in the filing of annual reports and the payment of fees." 327 N.W.2d 305, 306 (Mich. Sup. Ct. 1982). In that case two men started the defendant company, a corporate pig farm. George Spencer was the president and Cornelius Hoezee was the secretary-treasurer, and the two men brought in Richard Nagy to be a third director. The plaintiff was a company that delivered pig feed to the defendant corporation between August of 1971 and September of 1972. *Id.* In May of 1971, the state of Michigan voided the corporate charter for failure to file reports and pay filing fees in 1969, 1970, and 1971. *Id.* In late 1969 Mr. Spencer withdrew from participating in the activities of the defendant corporation due to his need to take over his parents' family farm. Mr. Nagy and Mr. Hoezee continued to conduct the corporation's business, but were not brought into the lawsuit due to a procedural defect and Mr. Hoezee's stroke. The plaintiff sought to make Mr. Spencer personally liable for the debt for the feed, even though the feed was largely used by Mr. Nagy and Mr. Hoezee for their personal operations in which Mr. Spencer no longer had an interest. *Id.* at 306.

Although the corporate charter had been dissolved, by the time of trial, the charter had been reinstated. The court proceeded to analyze Michigan law regarding reinstatement of corporate status and noted:

> Persons conducting business in the name of a pretended corporation indeed may be liable as partners for any debts incurred. Where the corporation has at least de facto existence, however, it is clear under Michigan law that the partnership theory of liability is inapplicable.
>
> . . . Under Michigan law, Zeeland Feeder Pig, Inc.'s charter was automatically voided "without any judicial proceedings whatsoever" upon its failure to file its

annual report and to pay the privilege fee for two consecutive years. Here the trial judge and the Court of Appeals held that the corporation lost even de facto existence upon forfeiture of its charter in 1971.

This theory is premised on the assumption that the forfeiture makes the corporation nonexistent. In Michigan, the statute providing for forfeiture of the charter must be read in light of the statute providing for retroactive reinstatement of the charter. . . . The effect of the reinstatement statute is to make the voidance of the charter more in the nature of a suspension of corporate privileges than an absolute termination of corporate existence . . . .

The forfeiture statute is obviously an attempt to bring to an end corporations which have ceased to conduct business as corporations. The statutory scheme calls for the winding up of corporations whose charters have been forfeited. The Legislature also recognized, however, that the failure to file reports and pay fees may be the result of inadvertence or neglect rather than an indication that the corporation is defunct. Thus, it provided for the reinstatement of the corporate charter upon paying back fees, filing back reports, and paying a penalty. . . .

We read the reinstatement statute as intended to make actions performed in the name of the corporation during the period of forfeiture corporate acts in the normal meaning of the term. Thus, corporate obligations incurred during the period of forfeiture are binding upon the corporation, and only the corporation – individual members are no more liable than had the forfeiture not occurred.

327 N.W.2d at 308-09 (citing *Campbell*, 244 N.W. 222) (other citations omitted). The court held that Mr. Spencer was not personally liable for the corporation's debts as the corporate charter had been revived. *Id.*

Although the Michigan statute has been revised since the *Zeeland Feeder Pig* case, the current statute is similar to the one analyzed by the Michigan Supreme Court in that case. The statute states in relevant part:

(1) A domestic corporation which has been dissolved under subsection (1) of section 922, . . . may renew its corporate existence or its certificate of authority by filing the reports and paying the fees for the years for which they were not filed and paid, and for every subsequent intervening year, together with the penalties provided by section 921. Upon filing the reports and payment of the fees and penalties, the corporate existence or the certificate of authority is renewed. . . .

> (2) Upon compliance with the provisions of this section, the rights of the corporation shall be the same as though a dissolution or revocation had not taken place, and all contracts entered into and other rights acquired during the interval shall be valid and enforceable.

Mich. Comp. Laws § 450.1925.

However, the situation is different when a dissolved corporation never renews its corporate existence. For example, in *Michigan Laborers' Health Care Fund v. Taddie Construction, Inc.*, the district court addressed whether the president of the defendant company could be held individually liable for unpaid fringe benefit contributions where the defendant company dissolved due to its failure to file annual reports. 119 F.Supp.2d 698, 700 (E.D. Mich. 2000). In reviewing the question under Michigan law, the district court noted:

> Ordinarily, the officers and shareholders of a corporation are not liable for the actions of the corporate entity. . . . Michigan law requires, however, that officers of a corporation that is automatically dissolved carry on no business except for the purposes of winding up affairs. It follows that, after automatic dissolution, corporate officers who carry on business that is not related to the winding up of corporate affairs "are individually liable, even though the business was conducted in the corporate name." Mr. Taddie carried on business that was unrelated to winding up, and in the corporate name, after the automatic dissolution of July 15, 1997. Most importantly, he continued to employ laborers, thus incurring new debts to the Funds. Mr. Taddie is therefore liable as an individual for those debts incurred to the Funds after the dissolution of July 15, 1997.

*Id.* at 702-03 (quotation omitted). The court granted the plaintiff's motion for summary judgment on the issue of whether the president was individually liable for the dissolved corporation's debts. *Id.*

In this action Defendants Quay and Neil Jorgensen do not dispute the Plaintiff's assertions that Forestply became dissolved pursuant to Mich. Comp. Laws § 450.1922, that it continued its operations after its dissolution, and that no one ever obtained reinstatement of the

corporate charter pursuant to Mich. Comp. Laws § 450.1925. Their only argument with respect to why they should not be held personally liable for the judgments against Forestply is that neither one was operating as a corporate officer of the company at the time the debts were incurred.

Only Quay Jorgensen filed an opposition to the summary judgment motion, but both Quay and Neil Jorgensen appear to argue that they should not be personally liable for Forestply's unpaid debts because they were not acting as officers of the company. Quay Jorgensen explicitly argues that although he is listed as the sole incorporator in the scant corporate records provided to the court, he had not had any involvement with the company in the many years since its dissolution. In his motion to set aside the default judgment against him, he asserted in an affidavit that he is older, lives elsewhere, and entrusted the corporation to his son, including entrusting his son with handling the arbitration disputes in Canada. [Court Doc. No. 36-1]. Although Quay Jorgensen did not file a personal affidavit in support of his opposition to Plaintiff's motion for summary judgment, there is little evidence connecting Quay Jorgensen to the arbitration awards in Canada and to Forestply's operations.

Further, although Neil Jorgensen did not file an opposition brief, Plaintiff has filed a portion of his responses to Plaintiff's interrogatories. In those responses, Neil Jorgensen indicates that "Quay Jorgensen has been the only owner, officer, director, shareholder, and/or principle [sic] of Forestply Industries, Inc." [Court Doc. No. 59-3]. He further indicates that he has never been an employee, officer, director, shareholder or principal of Forestply. *Id.* He asserts that his "sole involvement was to assist my father in the operation of the company in his absence." *Id.*

The court has very few facts pertaining to how the debts at issue against Forestply in Canada were incurred. Apparently, Forestply had some operations in Canada, complete with several employees working on its behalf. The parties have provided scant details on how those operations worked, which individuals were in charge of the operations, how the individual workers were paid their wages and by whom, who was running the company, the terms of the relevant CBA, and other basic facts relating to the debts at issue in this matter. The court record includes very little substantive information beyond the documents pertaining to the actual Canadian judgments themselves. Therefore, the court concludes that there are essential facts missing regarding which individuals were operating as officers and directors of Forestply when the debts at issue accrued. Both individual Defendants appear to be pointing their finger towards the other one to lay the responsibility for Forestply's debts on the other's shoulders. However, corporations do not operate by themselves; they operate only through people. Therefore, there is a distinct possibility that either Neil or Quay Jorgensen may be individually liable or that they may both be liable for the judgments against Forestply, but there are genuine issues of material fact regarding the operations of the company after its dissolution that will need to be resolved at trial. This court is obliged to view the facts in the light most favorable to the nonmoving party. For these reasons, the court will **DENY** Plaintiff's motion for summary judgment regarding the Canadian judgments in Case Numbers 07-CV-331247 and 07-CV-328265. The parties will proceed to trial regarding the individual liability of both Quay and Neil Jorgensen for these judgments.

IV.     **Conclusion**

As noted *supra*, Plaintiff's motion for summary judgment will be **GRANTED IN PART**

and **DENIED IN PART**. The court will **GRANT** Plaintiff's motion for summary judgment involving Case No. 07-CV-344952. The court will issue a judgment ordering Mr. Neil Jorgensen to pay Plaintiff an amount of $61,062.14 plus interest in accordance with the judgment issued in Ontario Superior Court. The court will **DENY** Plaintiff's motion for summary judgment regarding Case Numbers 07-CV-331247 and 07-CV-328365 issued by the Ontario Superior Court of Justice.

The parties should be prepared to proceed to trial regarding the personal liability of Defendants Quay Jorgensen and Neil Jorgensen under Michigan law for the judgments issued in Case Numbers 07-CV-331247 and 07-CV-328365 in the Ontario Superior Court of Justice against Forestply. This determination will include whether Quay Jorgensen and Neil Jorgensen were acting as officers and/or directors of Forestply after its dissolution in 1993 for purposes not related to winding down the corporation and whether such status subjects them to personal liability under Michigan law for Forestply's debts.

A separate order will enter.

                                             */s/ R. Allan Edgar*
                                             R. ALLAN EDGAR
                                            UNITED STATES DISTRICT JUDGE